## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NORTHWEST CASCADE, INC., | No. 60692-5-II |
| Respondent, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—A safety and health compliance officer for the Department of Labor and Industries inspected a construction site where Northwest Cascade Inc. was excavating a large 17-foot-deep trench to build a sewer connection. The Department discovered that one of Northwest Cascade's traffic flaggers was standing too close to the edge of the trench without a fall protection system in place. Relevant to this appeal, the Department cited Northwest Cascade under the Washington Industrial Safety and Health Act (WISHA) with two serious violations of worker safety regulations for failure to implement a fall protection system.

Northwest Cascade challenged these violations before the Board of Industrial Insurance Appeals, claiming that no fall protections were required because the flagger was not exposed to a fall; that the flagger was not subject to the relevant regulations because he qualified for an exception for people "[d]irectly involved with the excavation process," WAC 296-880-30005(2)(b)(i)(A); and that it would have been infeasible to implement such protections under the circumstances. The Board upheld the violations.

Northwest Cascade appealed to the superior court, which reversed the Board. The Department appeals the superior court's order. We conclude the violations were properly imposed because the flagger was close enough to the excavation to be exposed to a fall hazard, he was not exempt from fall protection requirements, and testimony established that it would have been feasible for the flagger to have some fall protection or stand a safe distance away from the excavation. We reverse the superior court and affirm the Board.

FACTS

I. INSPECTION OF CONSTRUCTION SITE

Zachary Dunham, a safety and health compliance officer for the Department of Labor and Industries, inspected a construction site in Olympia where Northwest Cascade was conducting trenching and excavation work on a private driveway to build a sewer connection. The trench was 17 feet deep, 24 feet wide, and 24 feet long. Northwest Cascade had five employees on-site: a foreperson, a pipelayer, an equipment operator, and two flaggers who were standing outside the trench and directing traffic using the private driveway to access the public street.

While on-site, Dunham identified several safety hazards. Dunham determined that one of the flaggers, Adam Horvath, was standing too close to the trench without fall protection and was therefore exposed to a risk of falling. Dunham asked the foreperson whether there was a written fall protection work plan in place to protect Horvath, and the foreperson said that there was not.

As a result of Dunham's inspection, the Department cited Northwest Cascade for two relevant serious violations of the Washington Administrative Code: failing to "ensure a fall protection system for employees exposed to a fall hazard of [10] feet or more" in violation of WAC 296-880-30005(2)(b)(ii)(A); and failing to "develop a written fall protection work plan" in violation of WAC 296-880-10020(1). Admin. R. (AR) at 20. Each violation carried a $900 penalty.

2

Northwest Cascade sought internal Department review of the citation, and the Department affirmed both violations in a corrective notice of redetermination.[1]

## II. BOARD HEARING AND ORDER

Northwest Cascade appealed the citation to the Board of Industrial Insurance Appeals. The Board held a hearing in December 2023 before an industrial appeals judge.

Dunham testified consistently with the facts described above. He also testified that he had measured Horvath as being 7 feet, 8 inches away from the trench and that he never saw Horvath closer to the trench than that. Dunham acknowledged that it would have been "extremely difficult to establish an anchor system" for fall protection "in [the] particular area where . . . Horvath was flagging." AR at 344. But Dunham testified that there were "other fall restraint systems that don't include an anchor or a harness." *Id.* He stated that Northwest Cascade could have implemented "some sort of a warning line system[,] . . . fall restraint[,] or . . . positioning system" that would physically keep the flagger away from the trench. AR at 363. In response to the question of whether there were "other types of fall restraint or fall arrest or positioning device systems that would have been feasible in this situation," Dunham stated, "[I]f I was to design a safe way to have an employee flag, I would have them be farther away from the excavation." AR at 362-63.

Dunham also acknowledged that he, Dunham, was not "tied off" while taking measurements near the trench. AR at 357. On cross-examination, he agreed that as a compliance

---

[1] The Department also cited Northwest Cascade for two general violations of WAC 296-155-655(11)(a) and WAC 296-27-01119(2)(c). The Department vacated those two violations in its corrective notice of redetermination and they are not at issue in this appeal. In addition, the Department sanctioned Northwest Cascade for a failure to properly secure trench shields, but the Board reversed that violation and it is not at issue in this appeal.

officer he is trained not to "expose [himself] to a [s]erious hazard" and that he did not believe he was "exposed to a [s]erious hazard" when he was taking the measurements. *Id.*

Horvath testified that although he sometimes did other tasks for the excavation team, he did not do anything except direct traffic while he was flagging. Horvath also testified that he was not "wearing any fall protection on the day of the inspection" because it would have been "unrealistic" to do so. AR at 213 (boldface omitted). And he stated that he did not see "any way that [they] could [have] put up any kind of guardrails" around the trench. *Id.* (boldface omitted).

Eric Wright, Northwest Cascade's vice president of safety and environmental compliance, testified that "Northwest Cascade was actually going above and beyond [legal] safety requirements" by having flaggers at all, contending that traffic control was not required on private property. AR at 408.

Northwest Cascade argued that Horvath was not exposed to a fall risk because 7 feet, 8 inches was too far from the trench to be hazardous. It further argued that as a flagger, Horvath fit within an exception to the regulation's fall protection requirements for people "[d]irectly involved with the excavation process" under WAC 296-880-30005(2)(b)(i)(A).[2] And it raised the affirmative defense that even if the exception did not apply, it was infeasible to provide fall protection for Horvath under the circumstances.

---

[2] Between the issuance of the original citation and the Board hearing, former WAC 296-880-30005(1)(d)(ii)(A) was renumbered as WAC 296-880-30005(2)(b)(ii)(A) effective Nov. 1, 2022. Wash. St. Reg. 22-19-082. Therefore, although the original citation included a violation of WAC 296-880-30005(1)(d)(ii)(A), we refer to WAC 296-880-30005(2)(b)(ii)(A) throughout this opinion.

The industrial appeals judge issued a proposed decision and order affirming the two violations related to fall protection. Northwest Cascade petitioned the Board to review the decision. The Board denied the petition and adopted the proposed decision and order as its final order.

As part of its narrative analysis, the Board determined that under the fall protection regulation applicable to excavation work, the "'affected area'" of an excavation was equivalent to the depth of the trench, up to a maximum distance of 15 feet. AR at 23 (quoting WAC 296-880-095(2)). "[S]ince the [trench] was approximately 17 feet deep, the 'affected area' would [therefore] be 15 feet from all edges." AR at 23. And because Horvath was standing 7 feet, 8 inches from the trench, he was in the affected area and exposed to fall risk. The Board dismissed Northwest Cascade's argument that 7 feet, 8 inches was too far from the edge "to amount to a fall hazard" because the Board found that the risk of a trench caving in "extends the area of fall exposure" and that Horvath could have ended up in the trench if he had needed to step backward to avoid traffic. AR at 23.

The Board next concluded that Horvath was not "directly involved with the excavation process while flagging," so the regulatory exception did not apply. AR at 24 (emphasis omitted). It reasoned that "a flagger's direct involvement is with the flow of traffic around the construction site, not with the actual excavation." AR at 25.

With regard to the affirmative defense of infeasibility, the Board acknowledged that the record showed it was not feasible to implement a guardrail system or to tie Horvath off. But it concluded that Northwest Cascade's infeasibility defense failed because "Dunham testified that . . . Horvath could've stood outside of the affected area while attending to his flagging duties." AR at 26. It reasoned that "nothing in the record . . . directly contradict[ed] . . . Dunham's assessment" and that photo evidence showed that "the other flagger stood well away from the excavation." *Id.*

The Board then made several related findings of fact. It found that "Horvath was standing in the affected area of the trench and was exposed to a fall of 10 feet or more." AR at 30 (Challenged Finding of Fact (FF) 5). It found that "Horvath was not directly involved in the excavation process while flagging." *Id.* (Challenged FF 7). It found that Northwest Cascade was required by regulation "to ensure that a fall arrest system, fall restraint system, or positioning device system was installed." *Id.* (Challenged FF 8). And it found that Northwest Cascade's infeasibility defense failed because "Horvath did not need to stand where he did to fulfill his duties as a flagger." *Id.* (Challenged FF 10).

The Board also found that Northwest Cascade was obligated to have a written fall protection work plan because "Horvath was exposed to a fall of 10 feet or more" but that "[n]o plan was written or available." *Id.* (Challenged FF 14). It found that Northwest Cascade's failure to have a written fall protection plan caused Horvath to be "exposed to a fall greater than 10 feet that created a substantial probability of death or serious physical harm." *Id.* (FF 15). And it found that there was "no evidence" that Northwest Cascade was unable to produce a written fall protection plan "because of infeasibility/impossibility, or greater hazard, or that the failure to comply was the result of unpreventable employee misconduct." *Id.* (FF 17).

In the Board's conclusions of law, it upheld the fall protection violations and imposed a penalty of $1,800. AR at 31 (Conclusion of Law 5).[3]

Northwest Cascade appealed to the superior court. The superior court concluded that flaggers are exempt from the fall protection regulations because "they are directly involved with

---

[3] The Board reversed the violation related to the trench shields.

the excavation process." Clerk's Papers at 90. Accordingly, it reversed the Board's decision as to the two violations related to fall protections. The Department appeals to this court.

ANALYSIS

I. STANDARDS OF REVIEW

In WISHA appeals, "[w]e review the Board's final order, rather than the superior court's decision, and we sit in the same position as the superior court." *Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 10, 16, 465 P.3d 375 (2018).

"[W]e review the Board's findings of fact and determine whether they are supported by substantial evidence." *Dep't of Lab. & Indus. v. Tradesmen Int'l, LLC*, 198 Wn.2d 524, 534, 497 P.3d 353 (2021). "Evidence is substantial where it is sufficient to persuade a fair-minded, rational person of the finding's truth." *Pro-Active Home Builders*, 7 Wn. App. 2d at 16. We review the record before the Board, and we do not reweigh the evidence. *Tradesmen Int'l*, 198 Wn.2d at 534. "We view the evidence and its reasonable inferences in the light most favorable to the prevailing party . . . in the highest forum that exercised fact-finding authority." *Erection Co. v. Dep't of Lab. & Indus.*, 160 Wn. App. 194, 202, 248 P.3d 1085 (2011). Here, the highest forum that exercised fact-finding was the Board.

"We review the Board's conclusions of law de novo to determine whether the Board correctly applied the law and whether the Board's findings of fact support its conclusions of law." *Pro-Active Home Builders*, 7 Wn. App. 2d at 16. "A conclusion of law erroneously described as a finding of fact is reviewed as a conclusion of law." *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

II. VIOLATION OF THE FALL HAZARD REGULATION

Northwest Cascade first challenges the Board's conclusion that it committed a serious violation of WAC 296-880-30005(2)(b)(ii)(A), which requires fall protection for workers exposed to fall hazards of at least 10 feet. Relatedly, Northwest Cascade challenges the trial court's finding that it "was required by WAC 296-880-30005(2)(b)(ii)(A) to ensure that a fall arrest system, fall restraint system, or positioning device system was installed," AR at 30 (Challenged FF 8), which we treat as a conclusion of law. *Willener*, 107 Wn.2d at 394.

> WAC 296-880-30005(2)(b)(ii)(A) states,
>
> The employer must ensure that a fall arrest system, fall restraint system, or positioning device system is provided, installed, and implemented in accordance with WAC 296-880-400 . . . when employees are exposed to fall hazards of 10 feet or more to the ground or lower level while[] . . . [e]ngaged in excavation and trenching operations. . . . Fall protection is required for employees standing in or working in the affected area of a trench or excavation exposed to a fall hazard of 10 feet or more[] . . . [if] [t]he employees are not directly involved with the excavation process.

Northwest Cascade argues that Horvath was not exposed to a fall hazard, that Horvath was not subject to the fall protection requirement because he was directly involved in the excavation process, and that fall protections would have been infeasible under the circumstances.

A.    Exposure to Fall

Northwest Cascade first challenges the Board's finding that Horvath was "in the affected area of the trench" and that he was therefore "exposed to a fall of 10 feet or more." AR 30 (Challenged FF 5). Northwest Cascade concedes that the trench was 17 feet deep and that Horvath was standing 7 feet, 8 inches away from its edge. Northwest Cascade points out that Dunham was "standing in the same area where . . . Horvath was flagging to take the measurement." Opening

8

Br. of Appellant at 5.[4] It notes that Dunham "testified that he didn't consider himself to be exposed to a fall hazard" and that Dunham "offered no explanation as to why . . . Horvath would be exposed to a fall hazard when [Dunham] was in the same location and wasn't exposed to a fall." *Id.*

The "affected area" of a trench is "[t]he distance away from the edge of an excavation equal to the depth of the excavation up to a maximum distance of 15 feet." WAC 296-880-095(2). The Board explained that the affected area is so large because the risk of a trench caving in "extends the area of fall exposure" for excavations. AR at 23. Because the trench was 17 feet deep, the affected area was 15 feet, and anyone standing in that affected area was exposed to a fall hazard of more than 10 feet. Horvath was standing only 7 feet, 8 inches away from the edge of the trench and was therefore well within the affected area as defined by regulation.

Northwest Cascade provides no authority or explanation for the proposition that Dunham's subjective belief that he was not exposed to a serious hazard while measuring how far Horvath was standing from the edge of the trench should override the plain language of the regulation.[5] We affirm the Board's finding that Horvath was exposed to a fall hazard because he was in the affected area of the trench as defined by the fall hazard regulation.[6]

---

[4] Under General Order 2024-1, the party seeking review in the superior court is treated as appellant in this court for purposes of briefing, and the responding party in superior court is treated as respondent.

[5] Additionally, Dunham was a state inspector for the Department, so as discussed below, he was "[d]irectly involved with the excavation process" under WAC 296-880-30005(2)(b)(i)(A) and therefore not subject to fall protection requirements.

[6] Northwest Cascade does not challenge the validity of the regulation.

B.        Direct Involvement in Excavation

Northwest Cascade next argues that the violation is invalid because flaggers such as Horvath are directly involved in excavation and are therefore exempt from fall protection requirements. Accordingly, it challenges the Board's finding that "Horvath was not directly involved in the excavation process while flagging." AR at 30 (Challenged FF 7). We treat that finding as an application of the legal exception to the facts about the flagging work Horvath was doing. *See Franklin County Sheriff's Office v. Sellers,* 97 Wn.2d 317, 329-30, 646 P.2d 113 (1982).

"Fall protection is not required at excavations when employees are[] . . . [d]irectly involved with the excavation process and on the ground at the top edge of the excavation [trench]." WAC 296-880-30005(2)(b)(i)(A). An explanatory note accompanying WAC 296-880-30005(2) states,

> Persons considered directly involved in the excavation process include:
> 1. Fore[person] of the crew.
> 2. Signal person.
> 3. Employee hooking on pipe or other materials.
> 4. Grade person.
> 5. State, county, or city inspectors inspecting the excavation or trench.
> 6. An engineer or other professional conducting a quality-assurance inspection.

We "interpret agency regulations as if they were statutes." *Shimmick Constr. Co. v. Dep't of Lab. & Indus.*, 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020). "If an administrative rule or regulation is clear on its face," we derive its meaning "from the plain language of the provision alone." *Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002). A regulation "is not ambiguous simply because different interpretations are conceivable." *Id.* "Rules and regulations are to be given a rational, sensible interpretation." *Id.* at 57. We interpret administrative regulations "as a whole, giving effect to all the language and harmonizing all provisions," *Id.*, so that "no portion [is] rendered meaningless or superfluous," *State v. Keller*, 143 Wn.2d 267, 277, 19 P.3d 1030 (2001).

We interpret "WISHA statutes and regulations . . . liberally to achieve their purpose of providing safe working conditions for every worker in Washington." *Tradesmen Int'l*, 198 Wn.2d at 534-35. "We accord substantial weight to an agency's interpretation within its area of expertise and uphold that interpretation if it reflects a plausible construction of the regulation and is not contrary to legislative intent." *Frank Coluccio Constr. Co. v. Dep't of Lab. and Indus.*, 181 Wn. App. 25, 36, 329 P.3d 91 (2014).

Northwest Cascade argues that anyone performing a task that is necessary to complete the excavation is directly involved with the excavation process for purposes of the exemption. The Department responds that flaggers are not directly involved because flagging does not involve "cutting into the earth or any auxiliary tasks directly involved with . . . that cutting process." Br. of Resp't at 17.

The phrase "excavation process" contemplates work beyond actual digging, so it is clear that the exception does not only apply to people whose jobs involve "cutting into the earth." WAC 296-880-30005(2)(b)(i)(A); Br. of Resp't at 17. But a worker must be *directly* involved to be included within the exception. Northwest Cascade's proposed reading—that everyone *necessary* to the excavation is within the scope of the exemption—would ignore the limitation that people must be *directly* involved. And we avoid interpretations that render words superfluous. *Keller*, 143 Wn.2d at 277. Moreover, because we read WISHA regulations liberally in favor of worker safety, we must interpret exceptions to safety regulations narrowly. *See Tradesmen Int'l*, 198 Wn.2d at 534-35. Northwest Cascade's proposed interpretation of the exception is too broad in light of the *directly involved* requirement.

We agree with the Department that a flagger's duties do not fall under the plain meaning of "[d]irectly involved with the excavation process." WAC 296-880-30005(2)(b)(i)(A). A

flagger's job is to control traffic around a trench. Their attention is primarily focused on drivers passing through the area, not on the trench itself or on the crew doing excavation work in the trench. As the Department points out, the jobs that the explanatory note explicitly lists as being directly involved require workers "to either be in the trench or to provide instruction or direction to the workers in the trench." Br. of Resp't at 22. While flaggers play an important role in ensuring the safety of drivers and the work crew, their involvement in the excavation process itself is indirect. The crew in the trench may not need to be aware of what the flagger is doing for significant stretches of time and vice versa. And an excavation occurring in an area where other people cannot drive might not require a flagger at all.

Northwest Cascade specifically points out that the explanatory note includes "'[s]ignal person[s]'" as being directly involved in the excavation process. Opening Br. of Appellant at 16 (quoting WAC 296-880-30005(2) note). It reasons that signal persons and flaggers are particularly analogous because "[a]s a flagger," Horvath "signaled motorists to ensure they did not drive into the" trench in order to "protect the safety of the [Northwest Cascade] crew and the motorists." *Id.* The Department claims that flaggers and signal persons are not analogous, arguing that "[u]nlike flaggers, signal persons are responsible for communicating directly with a crane . . . operator or to a coordinated group of cranes, . . . or other signal persons." Br. of Resp't at 23. We agree with the Department that Northwest Cascade's comparison of flaggers to signal persons is misplaced.

The regulations do not explicitly define "signal person" but outline some of the duties and requirements of signal persons. "A qualified signal person . . . must be provided" whenever "[t]he point of operation . . . is not in full view of the crane/equipment operator[;] . . . the crane is traveling[] [and] the view in the direction of travel is obstructed[;] . . . [or] [d]ue to site specific safety concerns, either the crane/equipment operator or the person handling the load determines

12

that it is necessary." WAC 296-155-53406(1)(a)-(c). Accordingly, signal persons must "[h]ave a basic understanding of crane/equipment operation and limitations, including the crane dynamics involved in swinging and stopping loads and boom deflection from hoisting loads." WAC 296-155-53302(3)(c). We can infer from these regulations that a signal person directs or signals crane or other large equipment operation in an excavation project.

In contrast, a "flagger" is "[a] person who provides temporary traffic control." WAC 296-155-305. Flaggers may not be "assigned other duties while engaged in flagging activities." WAC 296-155-305(9)(d).

As the Department points out, flaggers and signal persons "fill very different roles." Br. of Resp't at 22. A signal person's job is to direct a crane operator when the operator's view is obstructed or other safety concerns arise; by contrast, a flagger directs motorists to drive around the excavation trench. A flagger, unlike a signal person, is not focused on interfacing with the workers doing the digging. Accordingly, we uphold the Board's conclusion that Horvath, as a flagger who was undisputedly directing traffic rather than heavy equipment working on the excavation, was not directly involved in the excavation process and was not exempt from fall protections on that ground.

C.    Infeasibility of Fall Protection

Northwest Cascade next argues that even if flaggers are not exempt from fall protection requirements, the citations are invalid because fall protection would have been infeasible under the circumstances and, thus, fall protection requirements did not apply. Specifically, it argues that Horvath could not have stood 15 feet away from the excavation pit—outside the "affected area"—to flag because standing that far away would have "place[d] him directly into oncoming traffic." Opening Br. of Appellant at 20. Relatedly, Northwest Cascade challenges the Board's finding of

fact that Northwest Cascade failed to prove infeasibility because "Horvath did not need to stand where he did to fulfill his duties as a flagger." AR at 30 (Challenged FF 10).

When charged with violating a WISHA regulation, an employer may "establish an affirmative 'infeasibility' defense" by proving "'(i) that compliance with a particular standard either is impossible or will render performance of the work impossible; and (ii) that it (the employer) undertook alternative steps to protect its workers (or that no such steps were available).'" *Frank Coluccio*, 181 Wn. App. at 37-39 (quoting *Harry C. Crooker & Sons, Inc. v. Occupational Safety & Rev. Comm'n*, 537 F.3d 79, 82 (1st Cir. 2008). "[I]f a specific [health and safety] standard exists, the standard is presumed feasible and the burden is on the *employer* to prove that it is not." *SuperValu, Inc. v. Dep't of Lab. & Indus.*, 158 Wn.2d 422, 434, 144 P.3d 1160 (2006).

First, there was evidence in the Board record that Horvath could have stood outside the affected area to flag. At the hearing, Dunham testified, "[I]f I was to design a safe way to have an employee flag, I would have them be farther away from the [trench], at least out of the affected area." AR at 363. Although Dunham's statement was phrased in hypothetical terms, it was in response to a question about whether feasible fall restraint systems were available in this particular situation, and the Board reasonably interpreted the statement to mean that "Horvath could've stood outside the affected area while attending to his flagging duties." AR at 26. The Board also noted that "nothing in the record . . . contradict[ed] . . . Dunham's assessment" and that photos submitted as evidence showed that "the other flagger stood well away from the excavation." AR at 26.

Northwest Cascade's argument to the contrary is not supported by evidence in our record. Northwest Cascade maintains that "[t]he photograph[] in [e]xhibit 2 show[s] the road leading directly towards the [trench] and turning to run parallel to the [trench] to allow cars to avoid the

[trench]" and that therefore "[d]iverting traffic was essential to prevent distracted motorist[s] from driving directly into the" trench. Opening Br. of Appellant at 20. But the photograph in exhibit 2 does not clearly show that it would have been unsafe for Horvath to stand outside the affected area of the trench. And Northwest Cascade cites to no other evidence in the record to support its contention. Substantial evidence therefore supports the Board's finding of fact 10.



Ex. 2

Dunham also testified that while a fall arrest system involving an anchor and harness would be "extremely difficult" to implement in this situation, AR at 344, "some sort of fall restraint or some sort of a positioning system that's . . . physically going to keep [Horvath] out of the affected area" would be feasible. AR at 363. Northwest Cascade makes no argument to the contrary here. Northwest Cascade therefore fails to affirmatively establish that complying with these regulations

15

was infeasible, because we assume—and the record supports—that Horvath could have stood outside the affected area of the trench or been protected by a fall restraint system.[7]

Because Horvath was standing in the affected area of the excavation, Horvath was not excepted from fall protections under the terms of the regulation, and Northwest Cascade has not shown it was infeasible to protect Horvath from falls. We affirm the Board's decision to uphold the violation of WAC 296-880-30005(2)(b). Relatedly, we uphold the Board's conclusion that WAC 296-880-30005(2)(b) required Northwest Cascade "to ensure that a fall arrest system, fall restraint system, or positioning device system was installed" for flaggers working within 15 feet of the trench at issue in this case. AR at 30 (Challenged FF 8).

### III. VIOLATION OF THE WRITTEN FALL PROTECTION PLAN REGULATION

Northwest Cascade next argues that the Board erred when it upheld the violation of WAC 296-880-10020(1), requiring Northwest Cascade to have a written fall protection work plan, because "a fall protection system was not required for the excavation process as alleged in [the violation of WAC 296-880-30005(2)(b)]." Opening Br. of Appellant at 22.

Northwest Cascade also challenges several of the Board's findings of fact related to Northwest Cascade's lack of a written fall protection work plan: that Northwest Cascade "was required to have a written fall protection work plan in place" because "Horvath was exposed to a fall of 10 feet or more[,]" AR at 30 (Challenged FF 14); that "[a]s a result of the failure . . . to draft a written fall protection work plan, . . . Horvath was exposed to a fall greater than 10 feet that created a substantial probability of death or serious physical harm[,]" AR at 30 (Challenged FF

---

[7] The Department also raises Northwest Cascade's failure to seek a variance under WAC 296-900-11005. But that argument is only relevant to a defense that Northwest Cascade is not arguing on appeal, so we do not address it.

15); and that there was "no evidence that" Northwest Cascade could not draft a written plan "because of infeasibility/impossibility, or greater hazard, or that the failure to comply was the result of unpreventable employee misconduct." AR at 30 (Challenged FF 17). We conclude that Northwest Cascade was required to have a written fall protection work plan, and we uphold the challenged findings related to the required work plan.

WAC 296-880-10020(1) states, "The employer must develop and implement a written fall protection work plan including each area of the work place where the employees are assigned and where fall hazards of [10] feet or more exist." As we have already explained, Horvath was standing in the affected area of the excavation and exposed to a fall risk of 17 feet. Northwest Cascade was therefore required to implement a written fall protection work plan for this "area of the work place where . . . fall hazards of [10] feet or more exist." WAC 296-880-10020(1). There was substantial evidence to support findings of fact 14 and 15 recited above.

Even if a written fall protection work plan is not required when an employee falls under an exemption from the fall protection requirements of WAC 296-880-30005(2)(b)(i) or when fall protection is infeasible, we have already determined that neither circumstance existed here. We uphold finding of fact 17, which we treat as a conclusion of law. *See Willener*, 107 Wn.2d at 394.[8] We therefore affirm the Board's decision to uphold the violation of WAC 296-880-10020(1).[9]

---

[8] Based on the reasoning in this section and the previous section, we also uphold the Board's conclusions of law 2, 3, 4, 5, and 7. We do not address the Board's conclusion in finding of fact 17 and conclusion of law 4 that Northwest Cascade failed to prove its "violations were the result of uncontrollable employee misconduct" because Northwest Cascade does not argue that point on appeal. AR at 31.

[9] Northwest Cascade also claims that "the Board erred in all evidentiary rulings adverse to [Northwest Cascade]." Opening Br. of Appellant at 1. But Northwest Cascade does not point us to the rulings it takes issue with, let alone explain why they were erroneous. We therefore decline to consider this claim. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)

No. 60692-5-II

CONCLUSION

We affirm the Board and reverse the superior court.

_____
GLASGOW, J.

We concur:

_____
VELJACIC, C.J.

_____
LEE, J.

---

("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Additionally, Northwest Cascade appears to challenge the Board's conclusion of law 6. Opening Br. of Appellant at 1 (asserting that "the Board erred in . . . making Conclusions of Law Numbers 2, 3, 4, through 7"). But because conclusion of law 6 vacated a violation against Northwest Cascade related to trench shield placement, we assume that Northwest Cascade challenged it in error and do not address it.

18